IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER MASON,<br><br>                     Petitioner,<br><br>vs.<br><br>JOEL MARTINEZ, Warden, Sierra Conservation Center,[1]<br><br>                     Respondent. | No. 2:15-cv-02176-JKS<br><br>MEMORANDUM DECISION |

Christopher Mason, a California state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Mason is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Sierra Conservation Center. Respondent has answered, and Mason has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On February 18, 2010, Mason and his co-defendant, ex-wife Tywana Marie Cathey, were charged with the possession of cocaine base for sale or purchase (Count 1) and the cultivation of marijuana (Count 2) in connection with an on-going drug trafficking operation. With respect to Count 1, the information also alleged that Mason and Cathey were personally armed with a firearm. The information additionally charged Mason with possession of a firearm while having previously been convicted of a felony (Count 3). The information further alleged that Mason had suffered 10 prior convictions, subjecting him to enhanced punishment under the California Health and Safety and Penal Codes.

---

[1] Joel Martinez, Warden, Sierra Conservation Center, is substituted for W.L. Montgomery, Warden, Calipatria State Prison. FED. R. CIV. P. 25(c).

Prior to trial, Mason filed a motion challenging the search warrant issued and executed in his case. After hearing argument, the trial court denied Mason's motion. On February 22, 2010, Mason proceeded to a joint jury trial with Cathey. On direct appeal of his conviction, the California Court of Appeal laid out the following facts underlying this case and the evidence presented at trial:

> *Prosecution Case–in–Chief*
> On January 30, 2007, several teams of law enforcement officers served a search warrant at residences on Delta Street (Delta) and Rio Linda Boulevard (Rio Linda) in Sacramento. The warrant authorized the searches of both residences, a gold Cadillac Escalade, and defendants Cathey and Mason.
>
> *Delta*
> Upon entering Delta, officers found and detained both defendants and three other persons. In the kitchen, officers found and seized a glass plate containing 4.02 grams of cocaine base and a razor blade; a baggie containing 6.87 grams of cocaine base; a glass pipe for smoking narcotics; a digital gram scale; a spoon with cocaine residue; six walkie-talkies; and a box of shotgun shells. Mason's fingerprints were found on the glass plate and the digital scale.
> In the front room, officers found and seized three surveillance cameras and DVD's explaining how to grow marijuana.
> In the southeast bedroom, officers found and seized 0.43 grams of cocaine; 0.74 grams of marijuana; and two boxes of shotgun shells. Officers also found documents and papers belonging to, or relating to, Cathey and Mason. Pacific Gas and Electric bill was addressed to Cathey at Delta.
> In the northeast bedroom, officers found and seized a semiautomatic pistol loaded with six rounds. In this bedroom, too, officers found documents related to Cathey and Mason.
> In a bathroom, officers found and seized a pipe for smoking narcotics.
> In the Escalade parked at Delta, officers found cash; documents related to Cathey and Mason; and a stun gun.
> A search of Mason's person yielded cash and a key ring with two keys. One key operated the front door lock at Delta, and the other unlocked a safe found at Rio Linda. After Mason was placed in a patrol car, an officer observed he appeared to have several small white objects in his mouth. When the officer tried to reach in Mason's mouth, the objects were gone. In the officer's experience, it is common for people who possess cocaine base to conceal it in their mouths. Cocaine base is not water soluble and cannot be ingested by swallowing it.
> Diane Cutrer was present at Delta when the search warrant was executed. She consented to a search of her person. An officer found 0.09 grams of cocaine in her

2

pocket. Cutrer told the officer that she had come to Delta to purchase cocaine. Cutrer testified at trial that she had purchased cocaine from Mason and Cathey on several prior occasions. On the day of the search, she had come to Delta and found cocaine on the kitchen table waiting for her. Mason and Cathey were at the table. Cutrer paid $7 for the cocaine.

*Rio Linda*

Meanwhile, other officers searched Rio Linda, which was four miles away from Delta. Three juveniles were present at Rio Linda; two of them had the last name Mason.

In a bedroom, officers found a safe containing a large plastic baggie. Inside the baggie were three smaller baggies containing cocaine base in the amounts of 27.3 grams, 27.4 grams, and 27.1 grams. The safe also contained $178 cash. In the same bedroom, officers found documents and papers belonging to, or relating to, Cathey and Mason. Some items were addressed to Delta or to a different address in Sacramento County; a child's report card was the only item addressed to Mason at Rio Linda. In the bedroom and bathroom, officers found numerous plastic baggies, some with the corners ripped off.

In a different bedroom, officers found 31 immature marijuana plants and a grow light.

*Other Evidence*

Detective Jason Oliver, an expert in the sale and possession of narcotics, testified it was common for sellers of narcotics to keep their supply in one location and conduct sales at a different location. Detective Oliver opined—based upon the amounts of cocaine base found at the two locations; the presence of packaging material; the presence of equipment such as the digital scale, the razor blade, the safe, walkie-talkies, and the surveillance cameras; and the presence of firearms—that the cocaine base was possessed for the purpose of sales.

The parties stipulated, for purposes of counts three and four, that Mason was previously convicted of a felony.

*Defense*

Mason presented the testimony of Rosio Gutierrez, who lived next door to Rio Linda. Gutierrez testified Cathey was her neighbor, but that she did not know Mason.

Cathey rested without presenting evidence or testimony.

*People v. Cathey*, No. C065248, 2013 WL 678432, at *1-3 (Cal. Ct. App. Feb. 26, 2013).

At the conclusion of trial, the jury found Mason guilty as charged on Counts 1, 3, and 4, and found the allegation associated with Count 1 to be true. The jury was unable to reach a

verdict on Count 2 as to Mason.[2] A bifurcated jury trial was also held as to the allegations that Mason had suffered prior convictions. The jury found true all 10 allegations (6 prior serious felony convictions, 2 prior narcotics convictions, and 2 prior prison terms). The trial court subsequently sentenced Mason to three indeterminate terms of 25 years to life imprisonment, all imposed pursuant to California's Three Strikes Law (CAL. PENAL CODE § 667(e)(2)(A)(ii) (mandating an indeterminate sentence of 25 years to life imprisonment for a defendant convicted of a felony when that defendant "has two or more prior felony convictions")). In all, the trial court imposed an aggregate sentence of a determinate term of 11 years' imprisonment followed by an indeterminate term of 25 years to life imprisonment, to be served consecutively.[3]

Through counsel, Mason appealed his conviction, arguing that the trial court violated his rights under the Fourth and Fourteenth Amendments by denying his motion to traverse the search warrant and failing to conduct a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).[4] On February 26, 2013, the California Court of Appeal issued a reasoned, unpublished opinion unanimously affirming the judgment against Mason. *Mason*, 2013 WL 678432, at

---

[2] The jury found Cathey guilty as charged on Counts 1 and 2 and found true the allegation associated with Count 1.

[3] Cathey was sentenced in a separate proceeding to an aggregate term of 9 years and 8 months' imprisonment. The court ordered Cathey's sentence suspended and placed her on formal probation for 5 years with special conditions. She was also ordered to serve 1 year in county jail, with credit for 59 days.

[4] In *Franks*, the United States Supreme Court held that a defendant is entitled to a post-search evidentiary hearing on the veracity of statements recited in the warrant affidavit if he can make a substantial preliminary showing that the affidavit contained intentional or reckless false statements and that the affidavit purged of falsities would not be sufficient to support a finding of probable cause. 438 U.S. at 171-72.

*9. Mason petitioned in the California Supreme Court for review, which was denied without comment on May 22, 2013.

Mason next filed in the California Court of Appeal a *pro se* petition for habeas relief. In that petition, he again argued that his rights under the Fourth and Fourteenth Amendments were violated by the denial of his challenge to the search warrants. He also alleged that trial counsel was ineffective for a variety of reasons and that appellate counsel was ineffective for failing to raise trial counsel's errors and failing to assert his Fourth Amendment rights. The petition was summarily denied on January 22, 2015. He raised the same claims in a *pro se* amended petition for habeas relief in the California Supreme Court, which was likewise denied without comment on June 10, 2015.

Mason then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on October 15, 2015. *See* 28 U.S.C. § 2244(d)(1)(A). Briefing is now complete, and the case has been reassigned to the undersigned judge for adjudication.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Mason argues that: 1) appellate counsel was ineffective (Grounds 1-4); 2) trial counsel was ineffective (Ground 5); and 3) he was subject to an illegal search and seizure due to a defective search warrant (Grounds 6-8).

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

A. Illegal Search and Seizure (Grounds 6-8)

In Grounds 6 through 8, Mason challenges the validity of warrants that authorized searches and seizure of evidence against him on the ground that the underlying affidavits contained materially false or misleading statements. Upon direct appeal, the Court of Appeal ruled *de novo* that there were "no evidence of lying or reckless inaccuracy" or material omissions, and the trial court did not err in denying Mason's motion for a *Franks* hearing. *Cathey*, 2013 WL 678432, at *8-9.

Mason fares no better on federal habeas review because his arguments are precluded by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976).[5] Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim,"

---

[5] Importantly, the Supreme Court has concluded that the restrictions on federal habeas review of Fourth Amendment claims announced in *Stone* do not extend to Sixth Amendment claims of ineffective assistance of counsel challenging counsel's actions with respect to motions to suppress evidence allegedly obtained in violation of the Fourth Amendment. *Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986). Mason's corresponding ineffective assistance claims are therefore cognizable on federal habeas review and discussed *infra.*

7

federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial. The Ninth Circuit has made clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim. *See Moormann v. Schiro*, 426 F.3d 1044, 1053 (9th Cir. 2005). "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Oritz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). California provides such an opportunity, *see* CAL. PENAL CODE § 1538.5; *Gordan v. Duran*, 895 F.2d 610, 613-14 (9th Cir. 1990), and thus Mason's Fourth Amendment claims are not cognizable here.

Moreover, the record shows that Mason was provided with the opportunity to litigate fully his Fourth Amendment claims. A defendant may move to suppress illegally obtained evidence in the trial court pursuant to California Penal Code § 1538.5(a) which provides:

> (1) A defendant may move . . . to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure on either of the following grounds:
> (A) The search or seizure without a warrant was unreasonable.
> (B) The search or seizure with a warrant was unreasonable because any of the following apply:
> (i) The warrant is insufficient on its face.
> (ii) The property or evidence obtained is not that described in the warrant.
> (iii) There was not probable cause for the issuance of the warrant.
> (iv) The method of execution of the warrant violated federal or state constitutional standards.
> (v) There was any other violation of federal or state constitutional standards.

*Id.*

Mason contends that he was denied a meaningful opportunity to litigate his claim by focusing on his denial of a *Franks* hearing, an issue fully presented to and considered by the state trial and appellate courts. Although it is not entirely clear whether a petitioner's claim that he

was denied a *Franks* hearing survives the *Stone* bar, numerous courts addressing the issue have applied the *Stone* doctrine to a *Franks* claim. *See, e.g.*, *Jones v. Ryan*, No. CV-15-0883, 2016 WL 2587176, at *37 (D. Ariz. Mar. 17, 2016); *Constance v. Holbrook*, No. C15-5426, 2016 WL 4578126, at *17 (W.D. Wash. Feb. 29, 2016). In his motion to suppress and quash the search warrant, Mason argued that the affidavits supporting the warrants contained material misstatements, without which probable cause could not have been established. The state trial court held a preliminary hearing on Mason's motion and determined that probable cause existed even excluding the challenged portions of the affidavit. *Cathey*, 2013 WL 678432, at *5. Mason filed another motion to suppress evidence, traverse and quash the search warrant or, in the alternative, reconsider the prior ruling. After hearing oral argument on the motion, the trial court, by different judge, found that Mason had received a "full and fair hearing" and that there had been sufficient grounds for the ruling against him. *Id.* at *5. The state appellate court considered the allegedly-false statements and concluded on *de novo* review that a *Franks* hearing was not warranted. *Id.* at *9. Mason thus had a full and fair opportunity to litigate his *Franks* claim in state court and is precluded from seeking federal habeas corpus relief. *See Stone*, 428 U.S. at 481-82.

And even if not barred by *Stone*, Mason fails to proffer support for his bare contentions that the affidavits underlying the search warrants contained intentional or reckless falsehoods or that the remaining allegations of the affidavits were insufficient to support the search warrants. Mason therefore fails to show that a *Franks* hearing was warranted. Accordingly, this claim is without merit and must be denied.

9

B.     Ineffective Assistance of Counsel (Grounds 1-4, 5)

Mason additionally alleges that both trial and appellate counsel were ineffective for a variety of reasons. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Mason must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

1. *Trial counsel* (Ground 5)

Mason first complains that trial counsel did not obtain and present medical records of Dianne Cutter, a primary prosecution witness who testified that drugs found on her person had just been purchased from Mason and Cathey. Cutter testified at the 2010 trial that she had been drug-free since the January 30, 2007, search and admitted that, if she uses drugs, a heart attack could result. Mason alleges that counsel should have investigated Cutter's medical records to determine whether she had heart attacks triggered by her drug use, which then could have been used to impeach her. But he fails to provide any evidence that Cutter had heart attacks triggered by her drug abuse, which would show that she had lied at trial. This lack of evidentiary support is fatal to his claim. *See Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (petitioner's own self-serving statements insufficient to support claim of ineffective assistance of counsel without corroborating evidence); *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001) (mere speculation that evidence might be helpful insufficient to establish ineffective assistance).

He also claims that trial counsel should have called Sergeant Miller, a SWAT team member who could have disputed Cutter's testimony about her arrival and departure from the

11

Delta residence, as well as another witness who Mason claims would have corroborated Miller's account. During a *Marsden* hearing,[6] trial counsel explained that it was a tactical decision to leave the jury with the false impression that the police entry into the residence was so close after Mason's that Mason would not have had time to do "anything that was later found in that kitchen." He therefore "intentionally" did not call the witnesses, as he expected them to correct that false impression. Thus, as the Superior Court found on habeas review:

> On this record, it does not appear that counsel made an unreasonable tactical choice not to call Miller; rather, counsel's explanation showed a reasonable reflection with regard to his decision not to call Miller (or any SWAT team member). As such, petitioner does not show ineffectiveness of trial counsel regarding Sgt. Miller's not testifying.

Finally, Mason contends that trial counsel should have followed up on the subject of keys that he claimed were once in Cathey's possession, even though the keys were found in his possession during the search. But although he claims that counsel should have interviewed a tow truck driver, he fails to specifically identify the tow truck driver or provide an affidavit setting forth what his testimony would have been. He therefore fails to show that the testimony would have reasonably led to a different outcome in his case, and he is therefore not entitled to relief on this argument either. *See Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) (rejecting claim of ineffective assistance for failure to call witness based upon lack of affidavit from witness regarding substance of testimony).

---

[6] *People v. Marsden*, 465 P.2d 44 (Cal. 1970) (holding it was error for the trial court to deny a defendant's motion to relieve his court-appointed attorney without holding a hearing to allow the defendant to explain its grounds).

2. *Appellate counsel* (Grounds 1-4)

Mason likewise alleges that appellate counsel rendered ineffective assistance. He first claims that counsel was deficient for failing to raise the ineffective assistance of trial claims discussed above. But because he fails to show that trial counsel was ineffective, Mason fails to demonstrate that appellate counsel was deficient for not raising the ineffective assistance claims on direct appeal, or that he was prejudiced by the omission. *See, e.g.*, *Morrison v. Estelle*, 981 F.2d 425, 429 (9th Cir. 1992) (finding that a claim of ineffective assistance of appellate counsel on the ground that counsel failed to argue inadequate notice of the charge must fail because counsel "would not have been successful").

Mason also argues that appellate counsel did not adequately raise his Fourth Amendment claims on direct appeal. He contends that appellate counsel was ineffective in declining to argue on appeal, as Mason had urged, that the trial court abused its discretion in denying his *Franks* motion. On state habeas review, the Superior Court denied this claim as follows:

> The claim fails. Petitioner attaches copies of his correspondence to and from appellate counsel. In these letters counsel informed him that it would be of no moment to raise such a claim because the appellate court would be reviewing the *Franks* motion de novo and not for trial court error.
> Indeed, in considering petitioner's direct appeal, the Third District Court of Appeal specifically stated that it was undertaking a de novo review of the *Franks* motion itself and then went on to conclude that petitioner had not show sufficient grounds for a *Franks* hearing, even if the questioned statements in support of the warrant had been excised. The court further found that petitioner had not even shown standing to contest the search of the Rio Linda address. Petitioner, therefore, fails to show that counsel was ineffective relative to the *Franks* hearing issue. The claim is denied.

This conclusion is both reasonable and fully supported by the record, and appellate counsel cannot be deemed ineffective for the reasons persuasively articulated by the Superior Court.

13

The Superior Court likewise considered and rejected Mason's claim that appellate counsel was ineffective for failing to cite to a particular case on appeal:

> Petitioner next claims that appellate counsel was ineffective for declining to cite on appeal, as he had urged counsel to do, the case of People v. Hernandez (1994) 30 Cal. App. 4th 919, in support of the claim that the search warrant was not supported by probable cause.
> The claim fails. The correspondence from counsel attached to the petition shows that appellate counsel informed petitioner that *Hernandez* was not similar to petitioner's case when compared to the affidavit in *Hernandez*. Petitioner's argument is therefore unavailing. In addition, petitioner fails to demonstrate what difference *Hernandez* would have made given the Third District's de novo review and its conclusions that, even without the statements petitioner challenges, the affidavit was sufficient to show probable cause.

Again, the state court's rejection is reasonable and supported by the record, and Mason's ineffective assistance claim must fail on federal habeas review as well.

Finally, Mason faults appellate counsel for failing to file a petition for rehearing. However, there is no constitutional right to counsel "beyond the stage in the appellate process at which the claims have once been presented by a lawyer and passed upon by an appellate court." *Douglas v. California*, 372 U.S. 353, 356 (1963). Mason's claim is therefore not cognizable because he has no right to counsel or to effective assistance of counsel beyond his first appeal as of right. *See Ray v. Cate*, No. C 11-1604, 2014 WL 3841214, at *19 (N.D. Cal. Aug. 4, 2014) (finding no ineffective assistance of counsel based on appellate counsel's failure to file a petition for review in the California Supreme Court because claim is not cognizable). Mason is therefore not entitled to relief on any argument advanced in support of his ineffective assistance of counsel claims.

## V. CONCLUSION AND ORDER

Mason is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: June 16, 2017.

                                                  /s/James K. Singleton, Jr.
                                                  JAMES K. SINGLETON, JR.
                                                  Senior United States District Judge